IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| M G Exploration, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>XTO Energy Inc.,<br><br>        Defendant and Third<br>        Third-Party Plaintiff,<br><br>vs.<br><br>Helene Brynestad,<br><br>        Third-Party Defendant. | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT**<br><br>Case No.1:22-cv-200 |

Before the Court is the Plaintiff's motion for partial summary judgment filed on June 27, 2024, and the Defendant's motion for summary judgment filed on June 28, 2024. See Doc. Nos. 35 and 40. The motions have been fully briefed. See Doc. Nos. 36, 41, 43, 44, 49, and 50. For the reasons set forth below, the Plaintiff's motion is denied and the Defendant's motion is granted in part and denied in part as to the conversion claim.

### I.    BACKGROUND

M G Exploration, LLC ("MG") owns overriding royalty interests in Dunn County, North Dakota. MG's sole member, Valerie Valdez, is a citizen of Colorado. XTO Energy Inc. ("XTO") owns and operates oil and gas wells in North Dakota. XTO is a Delaware corporation with its principal place of business in Texas.

This case arises from overriding royalty interest ("ORRI") payments XTO made to Avalon Corporation ("Avalon"), MG's predecessor-in-interest, between 2013 and 2021. The ORRI at

1

issue in this case was carved out of the working interest in an oil and gas lease dated October 1, 1977, between the Bureau of Land Management, State of Montana, as lessor, and PJ Allen, as lessee ("PJ Allen lease'). In August 1990, Avalon conveyed its working interest in the PJ Allen lease to JN Exploration & Production Limited Partnership ("JN Exploration") and reserved an overriding royalty interest. In the conveyance, Avalon and JN Exploration agreed that JN Exploration would pay the overriding royalty interest to Avalon out of JN's working interest in the PJ Allen lease. JN Exploration later conveyed its working interest to third parties.

Although XTO does not own any of the working interest in the PJ Allen lease, XTO made payments to Avalon for the ORRI between October 2013 and September 2021, because XTO operates some of the wells that include portions of the PJ Allen lease. XTO initially sent the ORRI payments to Avalon at 3500 Bow Valley Squire IV, Calgary AB T2P 3H7 ("Calgary address"). However, a November 20, 2013, payment to Avalon was returned to XTO for a bad address. XTO searched for a new address for Avalon but could not find one, so XTO sent a verification of address letter to Avalon at the Calgary address. Avalon did not respond to the letter. However, on January 16, 2014, XTO received a verification of address letter where Helene Brynestad identified herself as the owner of Avalon. Brynestad identified 6788 Olden, Norway ("Norway address") as Avalon's new address. Brynestad did not own the interests related to this case. However, she did own other oil and gas interests. The parties dispute how Brynestad received the verification of address letter intended for Avalon. After receipt of the letter XTO updated its records by changing the payment address for Avalon to the Norway address. Between January 2014 and September 2021, XTO sent all payments for Avalon's ORRI to the Norway address. XTO mistakenly paid out **$490,452.69** to Brynestad. Avalon did not contact XTO to inquire about the ORRI payments

during this time. From 2013 to 2021, the only communications XTO received pertaining to Avalon's ORRI came from Brynestad and her representatives.

Valdez, MG's sole member, found Avalon's ORRI while searching various state's unclaimed property department records. Valdez contacted Dundee International Inc., an entity with whom Avalon merged in 1993, to offer a finders service on unclaimed funds held by various state's unclaimed property departments. As part of the finders service Valdez contacted various oil companies, including XTO, in search of suspended or unclaimed funds related to Avalon's interests. MG agreed to purchase all of Avalon's oil and gas interests, as well as litigation claims belonging to Avalon.

In January 2021, Valdez contacted XTO to inquire whether XTO was holding money in suspense for Avalon. XTO informed Valdez it did not have any funds in suspense. In May 2021, Valdez asked XTO to transfer the ORRI from Avalon to MG because she acquired the ORRI. XTO transferred the ORRI to MG in September 2021, after Valdez provided documentation of the conveyance. Since then, XTO has paid MG for the ORRI.

On October 17, 2022, MG brought claims against XTO in state court for breach of contract, failure to pay royalties under N.D.C.C. § 47-16-39.1, and conversion.[1] On November 15, 2022, XTO removed the action to federal court on the basis of diversity jurisdiction. MG filed a motion for partial summary judgment on June 27, 2024, requesting the Court grant summary judgment in its favor on its breach of contract, failure to pay royalties under N.D.C.C. § 47-16-39.1, and conversion claims. See Doc. No. 35. It also argues XTO cannot assert laches as an affirmative defense. XTO filed a motion for summary judgment on June 28, 2024, requesting the Court grant

---

[1] MG did not pursue a direct claim against Helene Brynestad, although they have a clear claim of conversion for the $490,542 paid to her. The record reveals Brynestad apparently owns other oil and gas interests developed by XTO.

summary judgment in its favor on each of the MG's claims. See Doc. No. 40. XTO argues that in the alternative, if MG can assert a conversion claim against XTO, the statute of limitations bars any claims occurring before October 2016. The motions have been fully briefed and are ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The Court must consider the substantive standard of proof when ruling on a motion for summary

4

judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.   LEGAL DISCUSSION

#### A.   BREACH OF CONTRACT

MG alleges XTO has "a contractual duty to pay royalties to MG and MG's predecessors in interest pursuant to applicable oil and gas leases and other contracts." See Doc. No. 1-2, p. 6. MG alleges XTO breached its duty to pay royalties. MG has not identified any contract between XTO and MG or its predecessors in interest. Instead, MG argues it is a third-party beneficiary to joint operating agreements ("JOAs") associated with oil and gas wells relevant to this matter. XTO is a party to the JOAs. MG maintains the JOAs require XTO to pay royalties to third parties. MG and XTO dispute whether MG is a third-party beneficiary to the JOAs.

North Dakota law allows third-party beneficiaries to enforce a contract. Under Section 9-02-04 of the North Dakota Century Code, "[a] contract made expressly for the benefit of a third person may be enforced by that person at any time before the parties thereto rescind it." When determining whether a party was a third-party beneficiary of a contract such that it could enforce the contract, the North Dakota Supreme Court has said:

> To enforce a contract between two others, a third party must have been intended by the contracting parties to be benefited by the contract. To determine whether the contract at issue was made expressly for the third party's benefit, we must look to the intentions of the parties to the contract. The intentions of the parties to a contract must be ascertained from the written contract alone, if possible. Another guideline for determining whether a party is a third-party beneficiary, as opposed to an incidental beneficiary, is whether the benefit to the third party was within the contemplation of the contracting parties.

Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc., 2006 ND 183, ¶ 20, 721 N.W.2d 43 (internal citations and quotation marks omitted).

MG was not expressly named in the JOAs. MG argues the alleged benefit it receives was within the contemplation of the contracting parties. MG claims it is an intended third-party beneficiary under the following provision of the operating agreement:

Operator shall charge the Joint Account with the following items:

…

2.   Rentals and Royalties

Lease rentals and royalties paid by Operator for the Joint Operations.

See Doc. No. 45-2, p. 18. MG argues the JOAs "clearly contemplate royalty owners, including MG, as an integral part of the Operating Agreements and an intended beneficiary that substantially benefits from the proper operations of oil and gas wells associated with its interests." See Doc. No. 44, p. 3.

The Court disagrees with MG's characterization of the aforementioned operating agreement provision. The provision does not in any manner obligate XTO to pay overriding royalty interest owners. The plain language merely allows the operator to charge certain expenses to the joint account. According to the JOA, the joint account is an "account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties." See Doc. No. 45-2, p. 17. This is consistent with the customary purpose of joint operating agreements. See Tawes v. Barnes, 340 S.W.3d 419, 426 (Tex. 2011) (recognizing joint operating agreements are contracts typical to the oil and gas industry "whose function is to designate an 'operator, describe the scope of the operator's authority, provide for the allocation of costs and production among the parties to the agreement, and provide for recourse among the parties if one

or more default in their obligations.'") Because the provision requiring the operator to charge lease rentals and royalties to the joint account benefits the contracting parties, any alleged secondary benefit to MG is merely incidental and not subject to third-party enforcement.

MG also claims it is an intended third-party beneficiary under the following provision of the JOA:

> Laws, Regulations and Orders:
>
> This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

See Doc. No. 45-2, p. 1. Nothing in this provision suggests it was intended to benefit MG. MG argues this provision provides that "XTO must comply with government orders, including NDIC Pooling Orders." See Doc. No. 44, p. 3. The provision does not create any obligation on the part of XTO. It simply acknowledges the contract is subject to certain laws and regulations. MG has failed to provide any evidence that a benefit to itself or its predecessors in interest was within the contemplation of the parties. The Court finds the parties did not expressly contract for the benefit of MG. Any alleged benefit to MG is incidental and not subject to third-party enforcement. Therefore, MG cannot maintain a breach of contract claim against XTO.

### B.   N.D.C.C. § 47-16-39.1

MG seeks statutory relief under Section 47-16-39.1 of the North Dakota Century Code. Courts have previously ruled that N.D.C.C. § 47-16-39.1 does not apply to overriding royalty interests. MG argues this Court's previous decisions interpreting the statute are erroneous. XTO argues the statute is inapplicable by its unambiguous terms. MG does not cite to case law

concluding N.D.C.C. § 47-16-39.1 applies to overriding royalty interests. The Court finds no reason to depart from its recent rulings and the rulings of other courts.

In *SunBehm Gas, Inc. v. Equinor Energy, LP*, the court found that overriding royalty interest owners cannot collect the statutory 18% interest under N.D.C.C. § 47-16-39 because the statute only permits "mineral owners or the mineral owner's assignee" to collect the 18% penalty interest on unpaid royalties. 2020 WL 2025355, at *5 (D.N.D. Apr. 27, 2020). The court explained that overriding royalty interests are different than royalty interests owned by mineral owners. In *Sandy River Res., LLC v. Hess Bakken Invs. II, LLC*, the Court concluded:

> The Court finds *SunBehm* persuasive. The plain language of the statute provides the penalty is only due to the mineral owner or the assignee. When an oil and gas lease is executed the mineral owner conveys a working interest to the operator and retains the owner's royalty interest. Id. at *3. A working interest gives the operator the right to develop the minerals. Id. An overriding royalty interest is carved out of the working interest created by an oil and gas lease and gives its owner a right to a share of production. Id. An overriding royalty interest is not an ownership interest in the minerals themselves. Slawson Expl. Co., Inc. v. Nine Point Energy, LLC, 966 F.3d 775, 780 (8th Cir. 2020).

2023 WL 1801958 at * 2 (D.N.D. Feb. 7, 2023).

MG argues the legislative history of N.D.C.C. § 47-16-39.1 supports applying the statute to overriding royalty interests. However, under North Dakota law the Court cannot consider extrinsic evidence, such as legislative history, unless it determines that the statute is ambiguous. See Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs. Ltd., 2007 ND 135, ¶ 9, 737 N.W.2d 253. Section 47-16-39.1 is unambiguous. By its plain terms the statute only applies to mineral owners or their assignees. The Court cannot consider the legislative history in interpreting the statute. Accordingly, MG is not entitled to the 18% penalty interest under N.D.C.C. § 47-16-39.1.

C. **CONVERSION**

MG alleges XTO converted oil and gas royalties belonging to MG's predecessors in interest by improperly paying Helene Brynestad, rather than Avalon. Under North Dakota law, conversion is the "tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." Nelson v. Mattson, 2018 ND 99, ¶ 24, 910 N.W.2d 171. "Conversion requires an intent to exercise control or interfere with the use of property to such a degree as to require a forced sale of the plaintiff's interest in the goods to the defendant." Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 11, 680 N.W.2d 634. "The gist of conversion is not in acquiring the complainant's property, but in wrongfully depriving the complainant of the property." Id. A conversion claim "requires the plaintiff prove the defendant had an intent to deprive the plaintiff of the property." McColl Farms, LLC v. Pflaum, 2013 ND 169, ¶ 20, 837 N.W.2d 359. In other words, it must be shown that XTO intended to exercise control or interfere with Avalon's use of specific, identifiable property.

An overriding royalty interest gives its owner a right to a share of production, and may give rise to a conversion claim. The actual oil and gas retrieved from the ground as a result of production operations is the specific identifiable property that MG and its predecessors, as owners of overriding royalties, were entitled to and did not receive. MG and its predecessors were entitled to a specific share of oil and gas production which XTO turned into monies as a result of the sale of oil and gas.

The Court finds there are genuine issues of material fact in dispute concerning the claim of conversion against XTO. When the evidence is viewed in a light most favorable to the non-moving party (MG), there are genuine issues of material fact in dispute that should be resolved by a jury

rather than the Court. The Court concludes that MG may maintain a claim for conversion at this stage of the proceedings. There are genuine issues of material fact in dispute that preclude summary judgment and warrant a trial.

## IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 40) is **GRANTED IN PART AND DENIED IN PART**. The Plaintiff's motion for partial summary judgment (Doc. No. 35) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 30th day of October, 2024.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court